**DeMarco•Mitchell, PLLC**
Robert T. DeMarco
Michael S. Mitchell
1255 West 15th St., 805
Plano, TX 75075
**T**  972-578-1400
**F**  972-346-6791

## IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| **IN RE:** | **Case No.:**      **14-40710-R** |
| **Robert Hobbs** | |
| XXX-XX-6423 | |
| 2715 Carriage Trail | |
| McKinney, TX 75070 | **Chapter 11** |
| **Debtor** | |

### DEBTOR'S FOURTH AMENDED PLAN OF REORGANIZATION
### [DATED NOVEMBER 25, 2015]

Pursuant to section 1121(a) of the Bankruptcy Code, Robert Hobbs, the Debtor and

Debtor-in-possession in this case (hereinafter "Debtor") hereby proposes this Plan of

Reorganization.

### ARTICLE I
### INTRODUCTION

A.      **Purpose of the Plan**.  The purpose of this Plan (defined *infra*) is to provide the details of

the Debtor's proposed reorganization and proposed distributions of money and/or property to

his respective Creditors (defined *infra*).  After the Plan has been confirmed, the Bankruptcy

Court (defined *infra*) will retain jurisdiction to determine the allowance of all Claims and to

effectuate and enforce the terms of this Plan.

B.      **Plan Summary**.

1.      Reorganization:  The Plan provides for a reorganization and restructuring of the

Debtor's financial obligations.

2.      <u>Distribution</u>:  The Plan provides for distributions to be made to Creditors from income earned by the Debtor in the operation of his business, a sole proprietorship doing business under the name of Spectrum Semiconductor Technologies, over a course of several years and pursuant to the terms of the various secured obligations as modified in the Plan.  A distribution schedule detailing monthly payments to be made by the Debtor for the benefit of his creditors post-confirmation is attached hereto as Exhibit "A".

3.      <u>Claims and Debts:</u>  Various types of Claims and Debts are defined in this Plan. This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Bankruptcy Code and all Claims and Debts will receive the treatment afforded in the Articles of this Plan.

**ARTICLE II**
**DEFINITIONS AND RULES OF CONSTRUCTION**

A.      **Specific Definitions**.  Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan.  Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

1.      <u>Administrative Claim</u> means any right to payment constituting a cost or expense of administration of the Case of a kind specified under §503(b) of the Bankruptcy Code and entitled to priority under §§507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (i) any actual and necessary costs and expenses of preserving the Debtor's Estate; (ii) any actual and necessary costs and expenses of operating the Debtor's business enterprise; (iii) any indebtedness or obligations incurred or assumed by the Debtor in

connection with the conduct of their respective business enterprises; (iv) all compensation and reimbursement of expenses to the extent awarded by the Court under §§330, 331 or 503 of the Bankruptcy Code; (v) any fees or charges assessed against the Debtor's Estate under §1930 of chapter 123 of title 28 of the United States Code; and (vi) any Claim for goods delivered to the Debtor within twenty days of the Petition Date and entitled to administrative priority pursuant to §503(b)(9) of the Bankruptcy Code.

2.　　Allowed Amount means the amount in lawful currency of the United States of any Allowed Claim, or the number of shares representing any Allowed Interest.

3.　　Allowed means, with reference to any Claim or Interest: (i) a Claim against or Interest in the Debtor, proof of which, if required, was filed on or before the Bar Date, which is not a Contested Claim or Contested Interest; (ii) if no proof of claim or interest was so filed, a Claim against or Interest in the Debtor that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009; or (iii) a Claim or Interest allowed hereunder or by Final Order.  Moreover, the following Claims or Interests are not Allowed:  (i) any Claim or Interest allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court; (ii) any Claim or Interest, or any portion thereof, which is subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order; and (iii) any Claim or Interest, or any portion thereof, which is attributable to punitive damages or penalties.

4.　　Avoidance Actions means any claim or cause of action belonging to the Debtor and arising under the Bankruptcy Code including, but not limited to, §§544, 547, 548 and 550.

5.　　Ballot means each of the ballot forms distributed with the Disclosure Statement

to each holder of an impaired Claim or Interest (other than to holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

6.      <u>Bankruptcy Code</u> means Title 11 of the United States Code, 11 U.S.C. §§101 *et seq.*, as in effect on the date hereof.

7.      <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

8.      <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under §2075 of title 28 of the United States Code, and local rules of the Court, as the context requires, and as in effect on the date hereof.

9.      <u>Bar Date</u> means the deadline by which a Claim must have been timely filed.  The Bar Date for all Administrative Claims is the date that is sixty days after the Effective Date.

10.     <u>Business Day</u> means any day other than a Saturday, a Sunday or a "legal holiday" as that phrase is defined in Bankruptcy Rule 9006(a).

11.     <u>Case</u> means the above entitled and numbered case which was commenced by the filing of a voluntary petition by the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

12.     <u>Causes of Action</u> means any and all claims, rights and causes of action that have been or could have been brought by or on behalf of the Debtor arising before, on or after the Petition Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to any and all claims, rights and causes of action the Debtor or the Estate may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or

otherwise, including but not limited to any claim or cause of action under a policy of insurance, claims, if any, against officers and directors of the Debtor, Avoidance Actions under the Code, and any other causes of action belonging to the Debtor or to the Estate.

13.     <u>Claim</u> means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

14.     <u>Claimant</u> means the holder of an Allowed Claim or Allowed Interest.

15.     <u>Class</u> means all of the holders of Claims or Interests with respect to the Debtor that have been designated as a class in Article IV hereof.

16.     <u>Confirmation</u> means the entry by the Bankruptcy Court of the Confirmation Order.

17.     <u>Confirmation Date</u> means the date of entry by the Bankruptcy Court of an order confirming the Plan.

18.     <u>Confirmation Hearing</u> means the hearing or hearings to be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of this Plan.

19.     <u>Confirmation Order</u> means the Final Order confirming this Plan.

20.     <u>Contested</u> when used with respect to a Claim or Interest, means a Claim against or Interest in the Debtor that is: (i) listed in the Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of claim has been timely filed; (ii) listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim or

Interest has been filed with the Bankruptcy Court, to the extent the proof of Claim or Interest amount exceeds the amount provided for in the Debtor's Schedules; or (iii) the subject of an objection which has been or may be timely filed by any party in interest or the United States Trustee and which claim has not been disallowed by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim or Interest, such a Claim or Interest shall be a Contested Claim or Contested Interest only to the extent of the objection.

21.    <u>Creditor</u> means holder of a Claim as of the Petition Date.

22.    <u>Debtor</u> means Robert Hobbs.

23.    <u>Disclosure Statement</u> means the Disclosure Statement for this Plan, together with any supplements, amendments, or modifications thereto.

24.    <u>Effective Date</u> means the date on which the Confirmation Order becomes a Final Order.

25.    <u>Entity</u> includes any individual, partnership, corporation, estate, trust, governmental unit, person, and the United States Trustee.

26.    <u>Estate</u> means the bankruptcy estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of this Case.

27.    <u>Fannie Mae Collateral</u> means that certain real property located at 2715 Carriage Trail, McKinney, Texas 75070 and more fully described as Lot 21, Block C of the Village of Eldorado, Phase III, an addition to the City of McKinney, Collin County, Texas, according to the map thereof recorded in Volume F, Page 745 of the map records of Collin County, Texas.

28.    <u>Fannie Mae Deed of Trust</u> means that certain deed of trust, dated January 25, 2008, and executed by the Debtor, the Debtor's spouse, and Everett Financial, Inc. d/b/a Supreme Lending and subsequently transferred to the Federal National Mortgage Association

on or about November 8, 2014.

29.    <u>Fannie Mae Loan Modification Agreement</u> means that certain Agreement dated September 7, 2012, and executed by the Debtor, the Debtor's spouse, and CitiMortgage, Inc. and subsequently assigned to the Federal National Mortgage Association on or about November 8, 2014.

30.    <u>Fannie Mae Note</u> means that certain mortgage note, in the original principal amount of $399,327.00, dated January 25, 2008, executed by the Debtor and Everett Financial, Inc. d/b/a Supreme Lending, and filed of record in Collin County, Texas on February 1, 2008 and subsequently transferred to the Federal National Mortgage Association on or about November 7, 2014..

31.    <u>Final Order</u> means: (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending or, (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order if no stay pending appeal has been obtained.

32.    <u>Initial Distribution Date</u> means the first Business Day on which a distribution is made under the Plan to holders of Allowed Claims.

33.    <u>Insider</u> means: (i) a director of a Debtor; (ii) an officer of a Debtor; (iii) a person in control of a Debtor; (iv) a partnership in which a Debtor is general partner; (v) a general

partner of a Debtor; (vi) a relative of a general partner in, general partner of, or person in control of a Debtor, (vii) an affiliate (defined in §101(2) of the Bankruptcy Code) of a Debtor or an Insider of an affiliate as if such affiliate were a Debtor; and (viii) a managing agent of a Debtor.

34.    <u>Lien</u> means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtor's estate which is permitted by, or not avoided pursuant to the Bankruptcy Code.

35.    <u>Order for Relief Date</u> means November 4, 2014, the date the Debtor converted his case from Chapter 13 to Chapter 11.

36.    <u>Petition Date</u> means March 31, 2014, the date the Debtor filed a voluntary Chapter 13 bankruptcy petition commencing this bankruptcy case.

37.    <u>Plan Proponent</u> means the Debtor.

38.    <u>Plan</u> means this "Debtor's Second Amended Plan of Reorganization [Dated June 11, 2015]", including any exhibits and attachments, each of which is hereby incorporated and made part thereof, as modified or amended from time to time in accordance with §1127 of the Bankruptcy Code.

39.    <u>Prime Rate</u> means the prime interest rate quoted and published from time-to-time in the "Money Rates" section of the *Wall Street Journal*.

40.    <u>Priority Claim</u> means all Claims entitled to priority under §§507(a)(2)-(a)(7) and (a)(9)-(a)(10) of the Bankruptcy Code.

41.    <u>Priority Tax Claim</u> means all Claims for Taxes entitled to priority under §507(a)(8) of the Bankruptcy Code, and shall include all Tax Claims secured by assets of the Estate.

42.    <u>*Pro Rata*</u> means proportionately, so that with respect to a particular Allowed

Claim, the ratio of: (i) the monies or property disbursed on account of such Allowed Claim to the amount of such Allowed Claim, is the same as the ratio of (ii) the monies or property disbursed on account of all Allowed Claims of the Class in which such Allowed Claim is included to the amount of all Allowed Claims in that Class.

43.     <u>Professionals</u> means those Entities: (i) employed under §§327 or 1103 of the Bankruptcy Code; and (ii) entitled, under §§330, 503(b), 506(b), and 507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting and/or other professional services and the costs and expenses related to such services from the Debtor and/or the Estate.

44.     <u>Rejection Damages Deadline</u> means the later of the Bar Date, or thirty (30) days after the entry of an order approving the rejection of an executory contract or unexpired lease.

45.     <u>Reorganized Debtor</u> means the Debtor after the entry of the Confirmation Order.

46.     <u>Schedules</u> means those schedules, statements and lists filed with the Court by the Debtor pursuant to and in accord with §521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b).

47.     <u>Secured Claim</u> means a Claim secured by a Lien on any property of any of the Estate, but only to the extent of the value of the interest of the holder of such Claim in the interest of the Estate in such property, the calculation of which shall not include any demand for default interest, penalty interest or other similar demands.

48.     <u>Subordinated Claim</u> means: (i) any Claim, or portion of a Claim, that is subject to subordination under §510 of the Bankruptcy Code; and (ii) any Claim, or portion of a Claim, for fines, penalties, forfeitures, for multiple, exemplary, or punitive damages, or other non-pecuniary, direct or non-proximate damages.

49.     <u>Tax</u> means and includes any federal state, county and local income, *ad valorem*,

excise, stamp and other tax of any type or nature whatsoever.

50.     Tax Claim means any and all Secured or Priority Claims of any Entity for the payment of any Taxes: (i) accorded a priority pursuant to §507(a)(8) of the Code (but excluding all Claims for post-petition interest and pre-petition and post-petition penalties all of which interest and penalties, pre-confirmation and post-confirmation, shall be deemed disallowed and fully discharged on the Confirmation Date), or in accordance with the provisions of 11 U.S.C. §1141(d)(5) as appropriate; or (ii) secured by valid Liens on property of the Estates existing on the Confirmation Date (but excluding all Claims for post-petition interest and pre-petition and post-petition penalties, all of which interest and penalties shall be deemed disallowed and discharged on the Confirmation Date, or in accordance with the provisions of 11 U.S.C. §1141(d)(5) as appropriate).

51.     United States Trustee means the Office of the United States Trustee, Region Six.

52.     Unsecured Claim means a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

B.     **Rules of Interpretation, Construction and Computation of Time**.

1.     Any capitalized term used in the Plan that is not defined herein, or other exhibits hereto, but that is defined and used in the Disclosure Statement has the meaning ascribed to that term in the Disclosure Statement.

2.     The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clauses contained in the Plan.

3.     Unless otherwise specified, a reference to an article or a section is a reference to that article or section of the Plan.

4.      Any reference in the Plan to a document being in a particular for or on particular terms and conditions meant that the document shall be substantially in such form or substantially on such terms and conditions.

5.      Any reference in the Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time as of the Effective Date.

6.      The rules of construction set forth in §102 of the Bankruptcy Code shall apply to the Plan.

7.      The computation of any time periods prescribed or allowed by the Plan shall be governed by Bankruptcy Rule 9006.

8.      All exhibits to the Plan (if any) are incorporated into the Plan and shall be deemed to be part of the Plan.

9.      The provisions of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Final Confirmation Order shall control over the contents of the Plan.

10.      Unless otherwise provided for in the Plan, whenever a distribution of property must be made, or an act required on a particular date, the distribution or act shall occur on such date, or as soon as practicable thereafter.

**ARTICLE III**
**PAYMENT OF ADMINISTRATIVE EXPENSES AND**
**THE TREATMENT OF UNCLASSIFIED CLAIMS**

A.      **Summary**.

Pursuant to §1123(a) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Claims for Professional Fees against the Debtors are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on

the Plan.  All such Claims are instead treated separately in accordance with this Article III and in accordance with the requirements set forth in §1129(a)(9)(A) of the Bankruptcy Code.

B.      **Administrative Claims**.

1.      In General.  All requests for payment of an Administrative Claims incurred before the Effective Date (except for those Claims arising under 28 U.S.C. §1930) shall be filed before the Bar Date.  Each holder of an Allowed Administrative Claim, except as otherwise set forth in this Article III (and specifically excluding Priority Tax Claims as set forth below), shall receive from the Reorganized Debtor: (i) with respect to Administrative Claims which are Allowed Claims on the Effective Date, unless the holder of a particular Allowed Claim agrees to a different treatment, the amount of such holder's Allowed Claim in one cash payment; and (ii) with respect to Administrative Claims which become Allowed Claims after the Effective Date, unless the holder of a particular Allowed Claim agrees to a different treatment, the amount of such holder's Allowed Claim in one cash payment on the date such claim becomes an Allowed Administrative Claim.   **Notwithstanding the foregoing**, any such Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor shall be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transaction giving rise to such liability and any agreements relating thereto.

2.      Administrative Claims of Professionals.  Each professional whose retention with respect to the Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Claim shall be required to file with the Bankruptcy Court a final fee application within ninety (90) days after the Confirmation Date.   Allowed Administrative Claims of professionals shall be paid in accordance with section 1129(a)(9)(A) of the Bankruptcy Code by the Reorganized Debtor.

C.     **Priority Tax Claims.**  Each holder of an Allowed Priority Tax Claim against the Debtor shall receive on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, at the election of the Debtor, either:  (i) Cash payment in the amount of such holder's Allowed Priority Tax Claim; (ii) deferred Cash payments over a period not to exceed five (5) years from the Petition Date equal to the Allowed amount of such Claim; or (iii) such other terms as may be agreed upon by such holder and the Debtor.  Notwithstanding any of the foregoing, the Priority Unsecured Claim of the Department of the Treasury – Internal Revenue Service will be paid via monthly pro-rata payments, at an interest rate of 3% per annum, over a term not to exceed 60 months from the Petition Date.

**ARTICLE IV**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

A.     **Manner of Classification of Claims and Interests**.  Except for Claims of a kind specified in §§507(a)(2) or 507(a)(8) of the Bankruptcy Code, all Claims against, and Interests in the Debtor with respect  to all property of the Debtor and the Estate, are defined and hereinafter designated in respective Classes.   The Plan is intended to deal with all Claims against and Interest in the Debtor, of whatever character, whether known or unknown, whether or not with recourse, whether or not contingent or un-liquidated, whether arising out of the conduct of the Debtor or from any entities in which he holds or previously held interests, and whether or not previously allowed by the Court pursuant to §502 of the Bankruptcy Code.  Only the holders of Allowed Claims, however, will  receive  any  distribution  under  the  Plan.    For  purposes  of determining *Pro Rata* distributions to holders of Allowed Claims under the Plan, Disputed Claims shall  be included in the Class in which such Claims would be included if they were Allowed Claims.

B.   **Classification**.   Pursuant to §1122 of the Bankruptcy Code, set forth below is a

designation of the classes of Claims against and/or Interests in the Debtor (if applicable).   A

Claim or Interest is placed in a particular Class only to the extent such Claim or Interest is an

Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or

otherwise settled or paid prior to the Effective Date.   Any Claims not described in Article IV of

this Plan are unclassified, and therefore, are not included in the Classes below.   The Allowed

Claims and Interests, except for Claims described above and which are not required to be

classified pursuant to §1123(a)(i) of the Bankruptcy Code, are divided into the following Classes.

| CLASS | DESCRIPTION | STATUS | VOTING RIGHTS |
|-------|-------------|--------|---------------|
| Class 1 | Secured Claim of the Federal National Mortgage Association | Impaired | Entitled to Vote |
| Class 2 | Secured Claim of the Department of the Treasury – Internal Revenue Service | Impaired | Entitled to Vote |
| Class 3 | Secured Ad Valorem Property Tax Claims | Impaired | Entitled to Vote |
| Class 4 | Secured Claim of Dell Commercial Credit | Impaired | Entitled to Vote |
| Class 5 | Secured Claim of Capital One Auto Finance | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Interests | Unimpaired[1] | Not Entitled to Vote[2] |

**ARTICLE V**
**TREATMENT OF CLAIMS AND INTERESTS**

A.   **CLASS 1 – Secured Claim of the Federal National Mortgage Association**

1.   Class 1 Summary.   Class 1 consists of the Secured Claim of the Federal National

---

[1] Class 7 is unimpaired unless an auction of assets is required under the provisions of Article V(G)(2) of this Plan.   In that event, Class 7 creditors will become impaired and would thus become entitled to vote.
[2] Class 7 is unimpaired unless an auction of assets is required under the provisions of Article V(G)(2) of this Plan.   In that event, Class 7 creditors will become impaired and would thus become entitled to vote.

Mortgage Association (hereinafter "Fannie Mae").  Said claim was originally asserted herein by CitiMortgage, Inc. and then assigned to Fannie Mae on or about November 8, 2014 [docket number 55].  The Fannie Mae Claim is currently serviced by Seterus, Inc (hereinafter "Seterus").

2.    <u>Treatment of Claim</u>.  Per its Proof of Claim and subsequent pleadings filed herein, Fannie Mae asserted a secured claim of not less than $511,501.00, including a revised arrearage component, as of November 17, 2015, of not less than $96,452.87 which encompasses both pre and post-petition contractual arrearages and fees.  The rights of the holder of an Allowed Class 1 Claim are as set forth in the Fannie Mae Note, the Fannie Mae Deed of Trust and the Fannie Mae Loan Modification Agreement.  Fannie Mae, through its servicer Seterus, shall be paid on the following terms and conditions by the Reorganized Debtor:

A. All terms of the January 25, 2008 Note executed by Robert Hobbs and Deed of Trust on the Property executed by Robert C. Hobbs and Stacy B. Hobbs ("Hobbs") and the Loan Modification Agreement executed by Robert C. Hobbs and Stacy B. Hobbs on September 27, 2012 which are not specifically modified by the terms of this Plan shall remain in full force and effect.

B. Hobbs shall pay the full amount due on the Note and Deed of Trust which, as of August 11, 2015 Seterus claims is not less than $511,501.00 plus unassessed attorney's fees incurred in connection with this bankruptcy of $1,218.75 and any unassessed fees, costs and escrow advances.  As of November 17, 2015, total arrearage on the Note and Deed of Trust was not less than $96,452.87.   The contract rate of interest is 4.625% per annum.

C. Prior to the effective date of the Plan, Hobbs shall make a down payment of at

least $13,543.76 to Seterus, which will be applied to the arrears on the Note.

D.  Hobbs shall resume ongoing monthly payments under the Note and Deed of Trust commencing with the December 1, 2015 payment, irrespective of the confirmation date, and continue to remit such ongoing monthly payments on the first day of each month until the Note is paid in full.  As of the date of the filing of this Plan, monthly contractual mortgage payments are $3,221.40.   Monthly payments are subject to change with respect to the monthly escrow amount being recalculated pursuant to and consistent with RESPA.  There shall be no penalty for pre-payment.

E.  In addition to the ongoing monthly payments pursuant to the Note and Deed of Trust, Hobbs shall pay the balance of the arrears after application of the funds referenced in paragraph C above, and specifically a sum not less than $96,452.87, in sixty (60) equal consecutive monthly payments (or fewer) commencing December 1, 2015, at an interest rate of 4.625%.

F.  The automatic stay shall terminate as to Seterus, with respect to the Property, fifteen (15) days after the Court enters an order confirming the Debtor's Plan.  The Note shall be de-accelerated and reinstated and the Note and Deed of Trust shall be in effect and enforceable except as modified by the terms of this Stipulation.  In the event Hobbs defaults on any provision of the Note as modified by the September 27, 2012 Loan Modification Agreement or Deed of Trust, as modified by the terms of this Stipulation, Seterus may exercise its rights to enforce all terms of the Note and Deed of Trust, including foreclosure.

G.  The payment fifteen (15) day grace period and 5% late charge provisions of

paragraph 6(A) of the Note apply to the ongoing monthly payments due under the Note commencing December 1, 2015.  Seterus shall not accelerate the Note or foreclose without giving all required notices to Hobbs required by the loan documents and by applicable state law.

H.  Seterus' claim shall not be discharged until it is paid in full per the terms of the Note and Deed of Trust.

I.  To the extent that Seterus requires a forbearance agreement, such an agreement shall be executed pursuant to the terms of this Stipulation.  Payments set forth herein are approximated (with the final amount subject to be adjusted consistent with the terms set out herein when a confirmed plan in underwritten and booked by Seterus).

3.      Address for Payment.  Until further notice, all payments due under the terms of this Plan and under the terms of the Fannie Mae Note and the Fannie Mae Deed of Trust shall be sent to the following address:  Federal National Mortgage Association, C/O Seterus, Inc., P.O. Box 2206, Grand Rapids, MI 49501-2206.

4.      Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Fannie Mae Note may be prepaid, in whole or in part, in the sole discretion of the Reorganized Debtor.

5.      Class 1 is impaired under the Plan.

B.  **CLASS 2 – Secured Claim of the Department of the Treasury – Internal Revenue Service**

1.      Class 2 Summary.  Class 2 consists of the Secured Claim of the Department of the Treasury – Internal Revenue Service (hereinafter "IRS").

2.      Treatment of Claim.  Per its Proof of Claim filed herein, IRS asserts a secured

claim in the total sum of $93,131.25.  The Class 2 Secured Claim of the IRS will be paid pro-rata, via monthly cash payments, with interest at the rate of 3% per annum, over a term not to exceed sixty months from the Petition Date.  IRS shall retain the liens securing its secured claim to the extent of the allowed amount of such claim.

       3.    <u>Address for Payments</u>.  Until further notice, all payments due to the IRS shall be sent to the following address:  Internal Revenue Service, Attn:  Lorraine Washington, 1100 Commerce Street, MC5024DAL, Dallas, TX 75242.

       4.    <u>Default</u>.   The occurrence of any of the following shall constitute an event of default under the Plan:

       A.    Failure to Make Payments:  Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan is an event of default.  Due to the size and ongoing nature of the IRS's claim, upon the occurrence of an event of default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code.

       B.    Additionally, as to the IRS:

       (i) If the Debtor or its successor in interest fails to make any plan payment, or deposit of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such

deposit or payment, or if the Debtor or its successor in interest

fails to file any required federal or state tax return by the due

date of such return, then the United States may declare that the

Debtor is in default of the Plan. Failure to declare a default does

not constitute a waiver by the United States of the right to

declare that the Debtor or its successor in interest is in default.

(ii) If the United States declares the Debtor, or a successor in

interest, to be in default of the Debtor's obligations under the

Plan, then the entire imposed liability, together with any unpaid

current liabilities, may become due and payable immediately

upon written demand to the Debtor or the successor in interest.

(iii) If full payment is not made within 14 days of such demand,

then the Internal Revenue Service may collect any unpaid

liabilities through the administrative collection provisions of the

Internal Revenue Code.

(iv) The IRS shall only be required to send two notices of default,

and upon the third event of Default the IRS may proceed to

collect on all amounts owed without recourse to the Bankruptcy

Court and without further notice to the Debtor.  The collection

statute expiration date will be extended from the Petition Date

until substantial default under the Plan.  Notices of default must

be sent to counsel for the Debtor via regular United States mail

and additionally e-mailed to said counsel at the following e-mail

address:  mike@demarcomitchell.com.  Notices sent via mail

should be sent to the following address:  Michael S. Mitchell,

DeMarco·Mitchell, PLLC, 1255 West 15th Street, Suite 805, Plano,

TX 75075.

(v)  These default provisions shall apply to a default in repayment

af the secured claim of the IRS and to a default in repayment of

the priority unsecured claim of the IRS begin repaid pursuant to

the provisions of Article III(C) of this Plan.

5.      Class 2 is impaired under the Plan.

C.      **CLASS 3 – Secured Ad Valorem Property Tax Claims**

1.      Class 3 Summary.  Class 3 consists of all holders of Allowed Secured Ad Valorem

Property Tax Claims.

2.      Treatment of Claims.  Per its Amended Proof of Claim filed herein the Collin

County Tax Assessor/Collector (hereinafter "CCTAC") asserts a secured claim in the total sum of

$104,148.75 for ad valorem business personal property taxes assessed for tax years 2001-2005

and 2007-2014.  CCTAC has agreed to repayment of this sum, at an interest rate of 12% per

annum, over a term not to exceed 84 months from the Petition Date and, more specifically with

payments to be made during months 60 through 84 (or less) of the Plan.  CCTAC has an

additional administrative claim for current year ad valorem taxes assessed against the Debtor's

homestead real property.  The Debtor pays the taxes on his homestead via mortgage escrow

and will continue to do so during the course of the Plan.

3.      Liens and Interest.  CCTAC, and any and all additional ad valorem taxing entities,

shall retain their respective statutory tax lien(s) on the Debtor's assets, both real and personal,

to secure repayment of all pre and post-petition ad valorem property taxes assessed against such property.   Any and all liens (both those arising prepetition and post-petition) held by the holder of a Class 1 Allowed Secured Tax Claim shall be preserved in any transfer of assets under the Plan.   Each holder of a Class 3 Allowed Secured Tax Claim shall be entitled to receive interest from the Petition Date to the Effective Date pursuant to 11 U.S.C. §506(b), as well as from the Effective Date until paid in full under 11 U.S.C. §1129(b), at a statutory rate of 1% per month as required by 11 U.S.C. §511.   If the post-petition ad valorem taxes are not paid prior to the State law delinquency date, each holder of a Class 3 Allowed Secured Tax Claim shall be entitled to receive any penalties and interest that accrue under State law based on the nonpayment of such tax.

       4.    <u>Default</u>.   Failure to pay post-petition taxes as they become due is an event of default.   As noted above, the Debtor pays some of his ad valorem tax liabilities via mortgage escrow.   However, in the event of a default in post-petition payment of ad valorem property taxes, whether on the Debtor's homestead real property or on his business personal property, or under the terms of the Plan, the holder of a Class 3 claim may give notice of such default to counsel for the Debtor.   Such notice shall be sent via regular United States mail and via e-mail to the following e-mail address:  [mike@demarcomitchell.com](mailto:mike@demarcomitchell.com).   Notices sent via mail should be sent to the following address:  Michael S. Mitchell, DeMarco·Mitchell, PLLC, 1255 West 15th Street, Suite 805, Plano, TX 75075.   In the event the default is not cured within 14 days of the date of transmission of the notice of default, the holder of a Class 3 claim shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court.   A holder of a Class 3 claim shall not be required to give more than one (1) notice of default.   Upon a second event of default, the holder of a Class 3 claim shall be entitled to collect all amounts owed

pursuant to state law outside of the Bankruptcy Court with no further notice.

5.      Class 3 is impaired under the Plan.

D.      **CLASS 4 – Secured Claim of Dell Commercial Credit**

1.      <u>Class 4 Summary</u>.   Class 4 consists of the Secured Claim of Dell Commercial
Credit (hereinafter "Dell").

2.      <u>Treatment of Claim</u>.   Per the Debtor's Schedules, Dell was owed the sum of
$3,266.85 as of the Petition Date on a debt secured by a purchase money security interest in
collateral with an estimated fair market value of $2,000.00. In accordance with the provision of
11 U.S.C. §§1123(b)(5) and 1129(b)(2), Dell shall be paid the total principal sum of $2,000.00,
via deferred cash payments, with interest at the rate of 3% per annum, over a term not to
exceed sixty months from the Effective Date.   Dell shall retain the purchase money security
interest securing its claim to the extent of the allowed amount of said claim, until the earlier of
the date that its allowed secured and unsecured claims are paid in full or the date that the
Debtor is granted a discharge herein.   The balance of Dell's claim shall be treated as a Class 6
claim.

3.      <u>Address for Payments</u>.   Until further notice, all payments due to the IRS shall be
sent to the following address:   Dell Commercial Credit, PO Box 689020, Dept. 50-0059645690,
Des Moines, IA 50368.

4.      <u>Default</u>.   Failure to remit payment to the holder of an Allowed Class 4 Claim in
accordance with the terms of this Plan is an event of default.   In the event of a default the
holder of a Class 4 claim may give written notice of such default to counsel for the Debtor.
Such notice shall be sent via regular United States mail and via e-mail to the following e-mail
address:   mike@demarcomitchell.com.   Notices sent via mail should be sent to the following

address:  Michael S. Mitchell, DeMarco·Mitchell, PLLC, 1255 West 15th Street, Suite 805, Plano, TX 75075.  In the event the default is not cured within 30 days of the date of transmission of the notice of default, the holder of a Class 4 claim shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court.

E.    **CLASS 5 – Secured Claim of Capital One Auto Finance**

1.    Class 5 Summary.  Class 5 consists of the Secured Claim of Capital One Auto Finance ("Capital One").

2.    Treatment of Claim.  Per its Proof of Claim filed herein, Capital One asserts a secured claim in the total sum of $2,101.57.  Capital One's claim is secured by a purchase money security interest in one 2004 Ford Expedition.  Capital One's security interest has been perfected in accordance with the requirement of Texas law by notation of such interest on the Texas Certificate of Title.  The Debtor will remit monthly installment payments in the total sum of $328.48 per month beginning no later than 14 days following the Effective Date, until such claim is paid in full.  Once Capital One's claim has been paid in full, the Debtor will utilize the funds previously used to pay the Capital One claim to pay claims of other holders of allowed claims herein.  Capital One shall retain the lien securing its claim to the extent of the allowed amount of said claim until the earlier of the date that it's allowed secured claim is paid in full or date that the Debtor is granted a discharge herein.

3.    Address for Payments.  Until further notice, payments due to Capital One shall be sent to the following address:  Capital One Auto Finance, C/O Ascension Capital Group, P.O. Box 201347, Arlington, TX 76006.

4.    Default.    Failure to remit payment to the holder of an Allowed Class 5 Claim in accordance with the terms of this Plan is an event of default.  In the event of a default the

holder of a Class 5 claim may give notice of such default to counsel for the Debtor.  Such

notice shall be sent via regular United States mail and via e-mail to the following e-mail

address:  mike@demarcomitchell.com.  Notices sent via mail should be sent to the following

address:  Michael S. Mitchell, DeMarco·Mitchell, PLLC, 1255 West 15th Street, Suite 805,

Plano, TX 75075. In the event the default is not cured within 30 days of the date of

transmission of the notice of default, the holder of a Class 5 claim shall be entitled to collect

all amounts owed pursuant to state law outside of the Bankruptcy Court.

F.    **CLASS 6 – General Unsecured Claims**

 1. <u>Class 6 Summary</u>.  Class 6 consists of all allowed unsecured general claims filed

against and/or scheduled by the Debtor, (including Claims arising from the rejection of

executory contracts and/or unexpired leases), other than:  (i) Administrative Claims; (ii) Priority

Tax Claims; or (iii) Claims included within any other Class designated in this Plan.  Class 6 also

consists of creditors whose secured claims are not dealt with above and those secured creditors

holding collateral of a value less than that of their claims(s).  Class 6 further consists of any

judgment creditors and general trade creditors of the Debtor.   Based upon the Debtor's

Schedules Class 6 creditors will receive approximately 24% of their Allowed claims.

 2. <u>Treatment of Claims</u>.  The Holders of Allowed Class 6 Claims shall each be paid a

pro rata share of a sum not less than $124,510.54 by the Reorganized Debtor over a period not

to exceed sixty months from the Effective Date.  Notwithstanding anything to the contrary in

this Plan, the Reorganized Debtor shall not be required to make distributions under this Plan of

a sum less than $100.00 to any Allowed Claim holder.  In such case, the Allowed Amount of

such Claims shall be reduced to zero and such funds shall be retained by the Reorganized

Debtor.

3.     <u>Address for Payments.</u>  Distributions to holders of Allowed Class 6 Claims shall be remitted to the payment address reflected upon any Proof of Claim filed by a creditor holding an Allowed Class 6 Claim.  In the event that a holder of an Allowed Class 6 claim did not file a Proof of Claim distributions shall be remitted to the address reflected for the creditor in the Debtor's schedules.

4.     Class 6 is impaired under the Plan.

G.     **<u>CLASS 7 – Interests</u>**.

1.     Holders of Class 7 Interests shall retain, unaltered, all legal, equitable and contractual rights to which the holder of such Interest is entitled.   In addition, because the Debtor is an individual, he is the Interest holder with respect to his Estate.  As set forth in Article VII of this Plan, title to all assets, properties, and business operations of the Debtor shall revest in Robert Hobbs as the Reorganized Debtor.

2.     In the event that the general unsecured creditors in Class 6 do not vote to accept the Plan, an auction for the ownership of the tangible and intangible business assets of the Reorganized Debtor shall be conducted.  Tangible business assets are described and itemized in item number 14 on the Debtor's Schedule B on file with the Bankruptcy Court.  If required, the auction will take place on the first business day that is five days after the Confirmation Order has been entered.  If required, the auction will take place at the offices of counsel for the Debtor, 1255 West 15th Street, Suite 805, Plano, TX 75075 beginning at 10:00 a.m. Central Standard Time.  Any party wishing to bid on the business assets of the Debtor must be present. The auction will be a cash auction. No credit bidding will be allowed. The winner of the auction must present good funds to be deposited into the Debtor in Possession account at the close of the auction.  Any party wishing to bid at the auction will be responsible for fulfilling the terms

of the Plan, including undertaking the liability as a responsible party for all IRS liability dealt with under this Plan.

3.      Class 7 is unimpaired under the Plan and not entitled to vote for or against the plan unless the Class 6 creditors object to confirmation and/or vote against the Plan.   In that event, Class 7 will be impaired and thus entitled to vote.

### ARTICLE VI
### ACCEPTANCE OR REJECTION OF THE PLAN

A.      **Voting**.   Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan shall be entitled to vote separately to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.   In the event no holder of an Allowed Claim in an impaired Class of Claims submits a Ballot accepting or rejecting the Plan, such Class of Claims shall be deemed to have voted to reject the Plan.

B.      **Class Entitled to Vote**.   The Classes of Claims identified as "impaired" in Article IV of this Plan are entitled to vote to accept or reject this Plan.   The Classes of Claims identified as "unimpaired" in Article IV of this Plan are conclusively presumed to have accepted this Plan pursuant to §1126(f) of the Bankruptcy Code.

C.      **Non-Consensual Confirmation**.   If a Class of Claims fails to accept this Plan by the statutory majorities provide in §1126(c) of the Bankruptcy Code, the Plan Proponents reserve the right to request the Bankruptcy Court to confirm this Plan as to such rejecting Class of Claims.

D.      **Elimination of Vacant Class**.   Any Class of Claims that does not have a holder of an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of

commencement of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class of Claims pursuant to §1129(a)(8) of the Bankruptcy Code.

**ARTICLE VII**
**PLAN IMPLEMENTATION**

A.      **Implementation**.   The Debtor proposes to implement and consummate this Plan through the means contemplated by §§1123(a)(5)(A), (E), (G) and (H), 1123(b)(1), (b)(2), (b)(5), and (b)(6) of the Bankruptcy Code.

B.      **Reorganized Debtor and the Re-vesting of Assets**.

1.      <u>Vesting of Property</u>.   On the Effective Date, title to all assets, claims, Causes of Action, properties, and business operations of the Debtor shall vest and/or re-vest in the Reorganized Debtor and thereafter the Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan.  From and after the Effective Date, except as otherwise described in this Plan, Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein.  From and after the Effective Date, in accordance with the terms of this Plan and the Confirmation Order, Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with Article VIII of this Plan.

C.      **Disbursing Agent**.   The Reorganized Debtor shall serve as disbursing agent, without bond, for purposes of making transfers and payments under this Plan.

D.      **Management of Reorganized Debtor**.   The Reorganized Debtor will operate and manage his business interests post-confirmation.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      **Executory Contracts and Unexpired Leases to be Assumed.** All executory contracts and unexpired leases of the Debtor as set forth in the Debtor's schedules shall be assumed pursuant to the provisions of §§365 and 1123 of the Bankruptcy Code.  Such assumed executory contracts and unexpired leases shall, as of the Effective Date, vest in the Reorganized Debtor. The Debtor reserves the right to reject any such contracts or leases pursuant to section C of this Article VIII, by filing a written election, prior to the Confirmation Hearing and serving such election on the parties to such contract or lease.

B.      **Cure Amounts**.  Amounts due under §365(b)(1)(A) of the Bankruptcy Code with respect to any executory contract or unexpired lease assumed pursuant to section A of this Article VIII shall be paid by the Reorganized Debtor in full, in Cash, on the Effective Date (except for amounts due under any contracts and leases that were assumed by the Debtor prior to the Confirmation Date, which amounts shall be paid in accordance with the Bankruptcy Court's order(s) authorizing such assumption – any unpaid obligations to cure arrearages under such contracts or leases over time shall become obligations of the Reorganized Debtor if they have not otherwise been paid or assigned to a third party prior to the Effective Date); provided, however, that as to any disputed portion of such cure amounts, payments shall be made on or as soon as practicable after such disputed portion is resolved by Final Order.

C.      **Rejection of All Other Executory Contracts**.  All executory contracts and unexpired leases of the Debtor, other than those described in section A of this Article VIII, are deemed rejected pursuant to this Plan and the Confirmation Order.

D.      **No Effect on Insurance Policies**.  To the extent possible, and without impacting the existing coverage under any insurance policy, the rejection of executory contracts shall not

apply to, and shall not apply to, and shall have no effect upon, any insurance policy.

## ARTICLE IX
## CONDITIONS TO CONSUMMATION

A.     **Conditions to Consummation**.    The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Plan Proponent:

1.     The Confirmation Order, entered in a form reasonably acceptable to the Plan Proponents, must have become a Final Confirmation Order.

2.     No request for revocation of the Confirmation Order under section 144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; and

3.     All actions, documents and agreements necessary to implement the Plan shall have been effectuated or executed.

B.     **Waiver of Conditions**.  Each of the conditions set forth above may be waived in whole or in part by the Plan Proponent in his sole and absolute discretion, without any notice to parties in interests or the Bankruptcy Court, and without a hearing.  The Plan Proponent's waiver of any one condition shall not be deemed a waiver of any other condition.

## ARTICLE X
## EFFECT OF CONFIRMATION

A.     **Bankruptcy Court Jurisdiction**.   Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtor, its assets and Estate.   Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XI of this Plan.

B.     **Legal Binding Effect; Discharge of Claims and Interests**.  The provisions of this Plan (i) shall bind all Claimants and Interest holders, whether or not they accept this Plan, and (ii) shall, upon full completion of all payments under the Plan shall, in accordance with the provisions of

11 U.S.C. §1141(d)(5), discharge the Debtor from all claims, debts and liabilities that arose before the Petition Date, and from any claims, debts and liabilities, including, without limitation, any claims, debts and liabilities of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, that arose, or have been asserted against, the Debtor at any time before the entry of the Confirmation Order or that arises from any pre-confirmation conduct of the Debtor, whether or not the claims, debts and liabilities are know or knowable by the claimant or interest holder.  In addition, the distributions provided for under this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims against and interests in the Debtor or any of its assets or properties, including any claim or interest accruing after the Petition Date and prior to the Effective Date.  Nothing herein shall be interpreted so as to grant the Debtor a discharge until he is so entitled in accordance with the provisions of 11 U.S.C. §1141(d)(5).

C.      **Satisfaction of Claims and Interests.**  Except as otherwise provided by the Plan or the Confirmation Order, the consideration distributed under the Plan shall be in complete satisfaction of all claims or interests of any creditors or holders of an interest, including claims or interests arising prior to the Effective Date.

D.      **Permanent Injunction.**  Except as otherwise expressly provided in, or permitted under, this Plan, all creditors and persons who have held, hold or may holds claims or interests that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the:  (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of claims against or interests in the Debtor; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any assets or property of same; or (iii) creation,

perfection or enforcement of any encumbrance of any kind against the Debtor arising from a claim.  This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination of the allowed amount of any claims that arose prior to the Effective Date by a court of competent jurisdiction.  Nothing in this injunction shall preclude Fannie Mae, via its current servicer Seterus, Inc., or via any future servicing agent, from enforcing the note and deed of trust on Debtor's principal residence against Stacy B. Hobbs or any other person consistent with Article V of the Plan.

E.    **Exculpation.**  The Debtor and his representatives, Professionals, advisors, attorneys, investment bankers, officers, directors, or agents shall neither have nor incur, and hereby release from, any Claim, claim, obligation, Cause of Action or liability to any holder of a Claim or an Interest, or any other party in interest, or any of its members, representatives, advisors, attorneys, financial advisors, investment bankers, agents or affiliates, or any of its successors or assigns, for any act or omission in connection with, relating to, or arising out of, this case, the pursuit of Confirmation of the Plan, the consummation of this Plan, or the administration of this Plan or of the property to be distributed under the Plan, except for: (i) claims which arise or relate to actions or omissions arising prepetition; and (ii) willful misconduct or gross negligence at any time.  In all respects the Debtor shall be entitled to reasonably rely upon the advice of counsel with respect to his duties and responsibilities under this Plan.

## ARTICLE XI
## JURISDICTION

A.    **Retention of Jurisdiction**.  The Bankruptcy Court shall retain exclusive jurisdiction over this Case after Confirmation, notwithstanding consummation or substantial consummation, for the following purposes:

    1.    to consider and effect any modification of this Plan under §1127 of the

Bankruptcy Code;

2.      to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

3.      to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

4.      to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

5.      to hear and determine all claims that the Debtor, as debtor in possession *qua* trustee, could assert under the Bankruptcy Code;

6.      to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

7.      to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan;

8.      to approve the reasonableness of any payments made or to be made, within the meaning of §1129(a)(4) of the Bankruptcy Code;

9.      to exercise the jurisdiction granted pursuant to §§505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

10.     to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan;

11.　　to hear and determine any controversies with respect to any settlements approved by the Bankruptcy Court;

12.　　to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Reorganized Debtor; and

13.　　to enter a final decree closing any or all Cases.

B.　　**Failure of the Bankruptcy Court to Exercise Jurisdiction**.　　If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, in or related to the Debtor's Estate, including with respect to the matters set forth herein, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII
## MISCELLANEOUS

A.　　**Request for Relief Under Section 1129(b)**.　　In the event any Class of Creditors or Interests shall fail to accept this Plan in accordance with §1129(a) of the Bankruptcy Code, the Debtor requests the Bankruptcy Court to confirm this Plan in accordance with the provisions of §1129(b) of the Bankruptcy Code.

B.　　**Modification**.　　The Debtor may alter, amend or modify this Plan under §1127 of the Bankruptcy Code or as otherwise permitted by law at anytime prior to Confirmation.　　Further, the Reorganized Debtor may also seek to modify the Plan at anytime after Confirmation and prior to substantial consummation of the Plan so long as the treatment of the holders of Allowed Claims or Interests are not materially or adversely affected.

C.　　**Headings**.　　All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

D.  **Due Authorization**.  Each and every Claim and Interest holder who elects to participate in the distributions provided for herein warrant that such Claim or Interest holder is authorized to accept, in consideration of such Claim against or Interest in the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claim or Interest holder under this Plan.

E.  **Further Assurances and Authorizations**.  The Debtor and/or the Reorganized Debtor, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan.

F.  **Applicable Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

G.  **Privileged Communications; Work Product.**  For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Reorganized Debtor shall succeed to the interest of the Debtor and the Estate, to the extent provided by applicable law.

H.  **No Interest**.  Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Filing Date.

I.  **No Attorneys' Fees**.  No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtor, except as specified herein or as allowed

by a prior order of the Bankruptcy Court.

J.      **Post-Confirmation Actions**.  After Confirmation, the Reorganized Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.

K.      **Post-Confirmation Conversion and/or Dismissal**.  Any Creditor or interested party, in the event of a default under the terms of this Plan, may file a motion to dismiss or convert this case pursuant to §1129 of the Bankruptcy Code after the Plan is confirmed.  If the Bankruptcy Court orders the case converted to one under Chapter 7, then all property that had been property of the chapter 11 bankruptcy estate, and not previously disbursed under the terms of this Plan, shall revest in the Chapter 7 bankruptcy estate.  Further, to the extent relief from stay had not previously been granted during the chapter 11 bankruptcy process, a new automatic stay shall be re-imposed upon all property of the Chapter 7 bankruptcy estate.

L.      **Minimum Distribution**.  Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor shall not be required to make distributions under this Plan of a sum less than $100.00 to any Allowed Claim holder.  In such case, the Allowed Amount of such Claims shall be reduced to zero and such funds shall be retained by the Reorganized Debtor.

M.      **Substantial Consummation**.  The Plan shall be deemed to have been substantially consummated when the Reorganized Debtor makes an initial distribution pursuant to the terms of the Plan.

N.      **Notices**.  All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.  Any notices required to be delivered to the

Debtor shall be addressed as follows:

**Robert Hobbs**
**2715 Carriage Trail**
**McKinney, TX 75070**

With a copy to:
**Michael S. Mitchell**
**DeMarco Mitchell, PLLC**
**1255 W. 15th Street, 805**
**Plano, TX 75075**

With an accompanying e-mail sent to:
**mike@demarcomitchell.com**

O.      **Notices and Distributions**.  On and after the Effective Date, all notices, requests and distributions to Claimants shall be sent to the last known address of: (1) the Claimant or its/his/her attorney of record as reflected in the Claimant's proof of claim; or (2) if there is no such evidence of a last known address, to the last known address of the Claimant according to the books and records of the Debtors.  Any Claimant may designate another address for the purposes of this Section by providing the Reorganized Debtor written notice of such address, which notice will be effective upon receipt by the Reorganized Debtor.

P.      **Notice of Default**.   Unless an alternative default procedure is specified in Article V above, in the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the Reorganized Debtor at the addresses specified in Article VII(N) above specifying the nature of the default.  Upon receipt of the default notice, the Reorganized Debtor shall have thirty (30) days to cure such default from the time of receipt of the default notice.  If such default has not been cured within the applicable time period, the default may be brought to the attention of the Bankruptcy Court or any other court of competent jurisdiction.

Q.      **Unclaimed Property**.  If any property distributed under the Plan by the Reorganized

Debtor remains unclaimed for a period of two (2) years the initial date of the attempted delivery such unclaimed property shall be forfeited by the Claimant and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtor free and clear of any claims, rights or interests.  The Reorganized Debtor, on the anniversary of the Effective date, or as soon as practicable thereafter, shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of all holders of unclaimed distributions.

R.      **Setoff**.  Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which the Debtor or Reorganized Debtor has an interest in satisfaction of that Creditor's pre-petition Claim.  Any right to set off a claim against an asset of Debtor or the Reorganized Debtor which is not specifically retained is waived.

S.      **No Admissions**.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Plan Proponent with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety, any classification of any Claim or Interest, or the valuation of any property.

Dated:  November 25, 2015

Respectfully submitted,
 /s/ Robert Hobbs
Robert Hobbs, Debtor

/s/ Michael S. Mitchell
DeMarco·Mitchell, PLLC
Robert T. DeMarco, Texas Bar No. 24014543
Email   robert@demarcomitchell.com
Michael S. Mitchell, Texas Bar No. 00788065
Email   mike@demarcomitchell.com
1255 W. 15th Street, 805
Plano, TX 75075
Tel.    972-578-1400/Fax.    972-346-6791
Attorneys for the Debtor and Debtor-in-Possession

### Exhibit A - Detail of Disbursements Under the Plan

| | Class 4 | Class 1 | Class 2 | Priority | Class 3 | Class 6 |
|---|---|---|---|---|---|---|
| | Dell Commercial Credit | Seterus/Fannie Mae | Internal Revenue Service | Internal Revenue Service | Collin County Tax A/C | General Unsecured Creditors |
| Allowed Claim: | $2,000.00 | $96,452.87 | $93,131.25 | $90,210.29 | $104,148.75 | $512,142.77 |
| Interest Rate: | 3.00% | 4.63% | 3.00% | 3.00% | 12% | N/A |
| Int. Start Mo: | 1 | 1 | 1 | 1 | 1 | N/A |
| Term | Months 1-10 | Months 1-58 | Months 1-38 | Months 1-38 | Months 60-81 | Months 10-59 |
| Total Paid | $2,027.60 | $107,819.68 | $97,741.32 | $94,675.86 | $152,454.15 | $124,510.54 |
| | | | | | | 24% |

Mo.-Pymt. Amt.

| | | | | | | |
|---|---|---|---|---|---|---|
| 01 - $6,925.00 | $2.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 02 - $6,925.00 | $2.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 03- $6,925.00 | $2.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 04 -$7,250.00* | $327.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 05 - $7,250.00 | $327.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 06 - $7,250.00 | $327.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 07 - $7,250.00 | $327.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 08 - $7,250.00 | $327.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 09 - $7,250.00 | $327.43 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $0.00 |
| 10 - $7,250.00 | $55.73 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $271.70 |
| 11 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 12 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 13 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 14 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 15 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 16 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 17 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 18 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 19 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 20 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 21 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 22 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 23 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 24 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 25 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 26 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 27 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 28 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 29 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 30 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 31 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 32 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 33 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 34 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 35 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 36 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 37 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 38 - $7,250.00 | $0.00 | $1,858.96 | $2,572.14 | $2,491.47 | $0.00 | $327.43 |
| 39 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 40 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 41 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 42 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 43 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 44 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 45 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 46 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 47 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 48 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 49 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 50 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 51 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 52 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 53 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 54 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 55 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 56 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 57 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 58 - $7,250.00 | $0.00 | $1,858.96 | $0.00 | $0.00 | $0.00 | $5,391.04 |
| 59 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 |
| 60 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 61 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 62 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 63 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 64 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 65 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 66 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 67 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 68 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 69 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 70 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 71 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 72 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 73 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 74 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 75 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 76 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 77 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 78 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 79 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 80 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7,250.00 | $0.00 |
| 81 - $7,250.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204.15 | $0.00 |

Totals:

| | | | | | | |
|---|---|---|---|---|---|---|
| $586,275.00 | $2,027.60 | $107,819.68 | $97,741.32 | $94,675.86 | $152,454.15 | $124,510.54 |

*Plan payment increases following payment in full of installment auto note obligation to Capital One Auto Finance